IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

February 14, 2022 04:57 PM
SX-2016-CV-00404
TAMARA CHARLES
CLERK OF THE COURT

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| ISLAND AIRLINES, LLC, EAGLE AVIATION, LLC, and TROND OSTHAUG,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BOHLKE, JR. BOHLKE INTERNATIONAL AIRWAYS, INC. WILLIAM R. BOHLKE, MICHAEL JOHNSON; VIRGIN ISLANDS PORT AUTHORITY, and DAVID W. MAPP, ASSISTANT EXECUTIVE DIRECTOR OF THE VIRGIN ISLANDS PORT AUTHORITY IN HIS OFFICIAL AND INDIVIDUAL CAPACITY,<br><br>Defendants. | Case No. SX-2016-CV-00404<br><br>ACTION FOR DEFAMATION, CONSPIRACY, AND TORTIOUS INTERFERENCE<br><br>2022 VI SUPER 20 |

## MEMORANDUM OPINION and ORDER

¶ 1 THIS MATTER is before the Court on Plaintiffs' Motion to Dismiss or for a more Definite Statement, filed November 23, 2020, relative to Counterclaims and Crossclaims of Defendants William Bohlke, Jr, Bohlke International Airways, Inc., and William R. Bohlke (herein collectively "Bohlke Defendants") pled with their Answer to the First Amended Complaint, filed October 13, 2020. Bohlke Defendants filed BIA Defendants' Opposition to Plaintiffs' Motion to Dismiss or for a more Definite Statement, on December 21, 2020, and Plaintiffs filed their Reply to Bohlke Defendants' Opposition on January 13, 2021.

¶ 2 Defendants Virgin Islands Port Authority ("VIPA") and David Mapp[1] (herein collectively "VIPA Defendants") filed VIPA Defendants' Motion to Dismiss Bohlke Defendants' Crossclaims or for a More Definite Statement, on January 4, 2021, relative to the Bohlke Defendants Crossclaims against VIPA Defendants. Bohlke Defendants responded to VIPA Defendants' Motion on February 15, 2021.[2]

¶ 3 For the reasons set forth herein, the Court will grant both Motions in part and deny them in part.

---

[1] Plaintiffs' First Amended Complaint in ¶ 9 identifies Defendant Mapp as Assistant Executive Director of the Virgin Islands Port Authority and the Manager of the Henry E. Rohlsen Airport on St. Croix. The Court takes judicial notice that Mapp is no longer with VIPA and will direct Bohlke Defendants to correctly identify in their amended pleading to be filed Mapp's successor, automatically substituted as a party pursuant to V.I. R. Civ. P. 25(d).

[2] Plaintiffs' and Defendants Virgin Islands Port Authority and Mapp's Joint Motion for Dismissal Pursuant to Rule 41(a)(2) is granted by separate Order entered herewith. The VIPA Defendants remain parties as Defendants to Bohlke Defendants' Crossclaims.

## BACKGROUND

¶4    As this Opinion and Order is principally for the parties who are familiar with the factual context, the Court will set forth only those facts necessary for the disposition of the present Motions. The allegations of the Bohlke Defendants' Crossclaims and Counterclaims are accepted as true for this review.

¶5    Generally, this case revolves around the ability to sell airplane fuel at Henry E. Rohlsen Airport on St. Croix, Virgin Islands. VIPA is a government agency tasked with managing the Virgin Islands ports – including the airports. *See* Bohlke Defendants' Answer to First Amended Complaint, Affirmative Defenses (herein "Counterclaim and Crossclaim") ¶ 52.[3] VIPA regulates the activities of private businesses and their representatives, including but not limited to the Bohlke Defendants and Plaintiffs. Counterclaim and Crossclaim ¶ 53. However, there are major disagreements between the parties concerning the pertinent factual landscape and Court will endeavor to untangle the conflicting factual stances.

### Plaintiffs' Factual Summary

¶6    Plaintiffs allege that Bohlke Defendants have illegally maintained a monopoly on the sale of airplane fuel on St. Croix and have used this monopoly to inflate the price of airplane fuel. They further allege that this high fuel cost has damaged St. Croix by curtailing commercial and charter flights. Plaintiff Island Airlines asserts that it, as a charter company, had its "sister company" Plaintiff Eagle Aviation purchase fuel trucks and equipment so that it could purchase fuel at competitive prices – and not be subject to Bohlke Defendants' inflated prices.

¶7    Plaintiffs allege that Eagle Aviation made a proposal to VIPA, through Defendant Mapp and the Executive Board of VIPA, to build a hanger and fuel dispensing company in order to go into competition with Bohlke. Plaintiffs also allege that Bohlke Defendants conspired to prevent Eagle Aviation from opening its fuel storage facility and acquiring its promised fuel concession. Plaintiffs allege that VIPA advised that it would be imposing additional conditions to permit Plaintiffs to acquire the fuel concession, and that failure to meet those conditions would deprive Plaintiffs of the ability to sell fuel. Even though VIPA had previously agreed to waive some requirements, VIPA subsequently refused to provide a temporary permit, all as the result of Bohlke Defendants' tortious interference. Plaintiffs allege that as a result of interference by Bohlke Defendants, the fuel concession agreement that Eagle Aviation should have received was revoked. As a result, Bohlke Defendants have been able to maintain their monopoly and Plaintiffs have lost income.

---

[3] Bohlke Defendants' Counterclaims and Crossclaims are presented as part of their Answer to First Amended Complaint, beginning at page 40. Paragraph references, maintained herein, are a continuation of the numbered paragraphs set out in their Affirmative Defenses.

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*     Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 3 of 32

2022 VI SUPER 20

8      Plaintiffs also allege that Bohlke Defendants and Defendant Johnson have conspired together to make knowingly false claims to the Federal Aviation Administration ("FAA") and others resulting in loss to Plaintiffs. Additionally, they allege that Bohlke Defendants have boasted that as a result of their close relationship with Defendant Mapp, Defendant Mapp would ensure that Plaintiffs never obtain a fuel concession permit. Defendant Johnson continues to harass and interfere with Plaintiffs' business.

9      As result of the foregoing, Plaintiffs assert that they have lost revenues, suffered economic damages, mental anguish, loss of enjoyment of life, and cost and fees.

### Bohlke Defendants' Factual Summary

10      Bohlke Defendants allege that VIPA has applied for and received FAA grant funding as part of the Airport Improvement Program, which is conditioned on acceptance of the conditions set forth in the Grant Assurances, including but not limited-to the "Minimum Standards." These Grant Assurances and Minimum Standards promote safe and efficient operation of aircraft and provide a level playing-field for all fixed based operators. Counterclaim and Crossclaim ¶ 57.

11      Bohlke Defendants allege that VIPA was investigated by FAA for its discriminatory treatment of Bohlke Defendants and their affiliates, by virtue of VIPA forcing Bohlke Defendants to comply with VIPA's rules and regulations (including the Minimum Standards), but not requiring other fixed based operators to do so, yet granting fuel-selling licenses to those other operators without complying with the same rules, regulations and Minimum Standards. Bohlke Defendants argue this constituted unfair economic discrimination.

12      Bohlke Defendants allege that Plaintiffs enlisted VIPA to discriminate against Bohlke Defendants, by persuading VIPA to allow Plaintiffs to sell fuel unsafely, without requiring compliance with the current Minimum Standards and incurring attendant costs, while VIPA simultaneously required Bohlke Defendants to comply with these standards – at considerable cost. Bohlke Defendants allege that Plaintiffs attempted to use their illegal advantages to attempt to sell fuel to aircraft operators at ultra-cheap prices, which they could afford due to their low overheard as a result of their noncompliance with the Minimum Standards or other VIPA/FAA rules and regulations.

13      Bohlke Defendants allege that after they made multiple complaints to VIPA, VIPA notified Plaintiffs that they would be required to comply with the Minimums Standards and to cease and desist selling fuel until they had fully complied. It is Bohlke Defendants' position that Plaintiffs initiated this lawsuit to coerce VIPA to rescind its compliance directive and intimidate Bohlke Defendants into acquiescing to Plaintiffs' dangerous and illegal practices, discriminatory to Bohlke Defendants.

14      Bohlke Defendants allege that Plaintiffs knowingly made false, defamatory, and intentionally misleading statements to FAA for the purpose of harassing Bohlke Defendants and

attempting to use FAA's enforcement mechanisms to coerce Bohlke Defendants. They further allege that Plaintiffs knew their comments to FAA would bring scrutiny on VIPA, which they intended to use to pressure VIPA, which in turn would pressure Bohlke Defendants to acquiesce to Plaintiffs' anti-competitive, discriminatory and dangerous practices. However, Bohlke Defendants allege that FAA rejected Plaintiffs' complaints, but that Bohlke Defendants' professional, business, private and public reputations and their related economic interests were irreparably damaged.

¶ 15    Bohlke Defendants further allege that Plaintiffs conspired with VIPA by agreeing to dismiss Plaintiffs' claims against VIPA and Defendant Mapp, in exchange for VIPA allowing Plaintiffs to continue their discriminatory, anti-competitive and dangerous fuel-selling without requiring Plaintiffs' compliance with the Minimum Standards and other laws and regulations.

## STANDARD OF REVIEW

¶ 16    · The Virgin Islands is a notice pleading jurisdiction and V.I. Civ. P. Rule 8(a)(2) provides that a pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 659, 2019 VI 21, ¶ 10 (V.I. 2019); *Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017). The defendant must be put on notice of the claims brought against it. *Mills-Williams*, 67 V.I. at 585; *Oxley v. Sugar Bay Club & Resort Corp.*, No. ST-18-CV-96, 2018 WL 4002726, at *2 (V.I. Super. May 14, 2018).

¶ 17    **"[A] complaint need not plead facts to support each element of a claim** in order to adequately allege facts that put an accused party on notice or to show the pleader is entitled to relief under V.I. R. Civ. P. 8(a)(2)[, b]ut a complaint should provide factual allegations sufficient **to advise the responding party of the transaction or occurrence** on which the claim is based **and identify the claim, reciting its elements,** so as to enable the defendant to respond intelligently and to enable the Court to determine on a motion to dismiss under V.I. R. Civ. P. 12(b)(6) whether the claim is adequately pled." *Oxley*, 2018 WL 4002726, at *5 (internal quotes and brackets omitted) (emphasis added); *see Mills-Williams*, 67 V.I. at 585 (". . .Virgin Islands Rule of Civil Procedure 8 expressly states that the Virgin Islands 'is a notice pleading jurisdiction,' V.I. R. Civ. P. 8(a), and the Reporters Note eliminates any doubt that this language is calculated to 'apply[] an approach that declines to enter dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief.'") (citing V.I. R. Civ. P. 8 Reporter's Note) (emphasis and brackets in original); *see also Brathwaite v. H.D.V. Holding Co.*, No. ST-16-CV-764, 2017 WL 2295123, at *3 (V.I. Super. May 24, 2017) ("the Court determines it should take an even more liberal approach than that prescribed by Virgin Islands precedent applying Fed. R. Civ. P. 8(a)(2) when considering if a complaint adequately alleges facts that put an accused party on notice of claims brought against it."). Further, "[t]he pleading shall be set forth in separate numbered paragraphs as provided in Rule 10(b), with separate designation of counts and defenses for each claim identified in the pleading." V.I. R. Civ. P. 8(a)(2).

¶ 18 Virgin Islands Rule of Civil Procedure 12(b)(6) disallows a pleading or portion of a pleading which fails to state a claim upon which relief can be granted. "A motion to dismiss for failure to state a claim upon which relief can be granted does not address the merits of the claim but merely tests whether the claim has been adequately stated in the complaint." *Yearwood Enters., Inc. v. Antilles Gas Corp.*, No. ST-17-CV-77, 2017 WL 2709831, at *1 (V.I. Super. June 21, 2017) (citing *Hans Lollik Corp. v. Gov't of the V.I.*, 17 V.I. 220 (V.I. Terr. 1981)). "In considering a motion to dismiss based on failure to state a claim upon which relief can be granted, a court must view all factual allegations in complaint as true and must construe the complaint liberally." *Yearwood Enters., Inc.*, 2017 WL 2709831, at *1 (citing *Callender v. Nichtern*, 32 V.I. 96 (V.I. Terr. 1995)).

¶ 19 "The purpose of the notice pleading standard is to avoid 'dismissals of cases based on failure to allege specific facts which, if established, plausibly entitle the pleader to relief.'" *Basic Servs., Inc.*, 71 V.I. at 659 (citing V.I. R. Civ. P. 8 Reporter's Note; *Mills-Williams*, 67 V.I. at 585). "In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Yearwood Enters., Inc.*, 2017 WL 2709831, at *1 (citing *Espinosa v. Gov't of the V.I.*, 20 V.I. 78 (V.I. Terr. 1983)).

¶ 20 Virgin Islands Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Motions for a more definite statement are disfavored and granted only sparingly. *Wintberg Heights Condo. Owners Ass'n, Inc. v. USVI Solar I, LLC*, 72 V.I. 294, 296 (V.I. Super. 2019) (internal citations omitted). Motions for a more definite statement are also not a substitute for discovery and "will not be granted where the level and nature of detail sought is more properly a role for discovery." *Id.* (internal citations omitted).

¶ 21 A more definite statement will ordinarily be required only when the pleading is "unintelligible;" such that a defendant cannot fairly be expected to frame a response or denial, at least not without risking prejudice. *Id.* (citing *Thorp v. District of Columbia*, 309 F.R.D. 88 (D.D.C. 2015); *Argno v. Hess Corp.*, 71 V.I. 463, 502 (V.I. Super. 2019) ("a more definite statement is only appropriate if an opposing party cannot prepare an adequate response because the facts alleged in support of the claim are deficient or too vague") (internal quotes omitted); *Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 314 (V.I. Super. 2018)). "'Courts have also allowed for more definite statements when the details sought concern potential defenses that could be raised and might be otherwise waived if not timely asserted.'" *Argno*, 71 V.I. at 502 (quoting *Alleyne*, 69 V.I. at 318). Pleadings must be read in their entirety whenever they are challenged. *Id.* at 504 (internal citation omitted).

## DISCUSSION

¶ 22  As a preliminary matter, VIPA Defendants raise a general allegation against all the Counterclaims and Crossclaims pled by Bohlke Defendants: "the [Bohlke] Defendants did not even caption their claims to reflect which claims were asserted against which party" making them "impossible . . . to decipher." VIPA Motion at 4. VIPA Defendants argue that when there are multiple defendants and multiple counts, the claimant's short and plain statement must specify against which defendant each claim applies, which is not possible with Bohlke Defendants' co-mingling of Counterclaims and Crossclaims. *See* VIPA Motion at 4-5.

¶ 23  The Court agrees that it must be possible for the parties named in the Counterclaims and Crossclaims to have sufficient notice as to each of the claims against it. Rather than addressing the argument against the Counterclaims and Crossclaims as a whole, the Court will address issues as to each of the individual counts. The Motions relate to virtually all counts [4] of the Counterclaims and Crossclaims, and each is considered in turn.

    I.    **Counterclaim and Crossclaim Count I: Deprivation by VIPA Defendants of BIA Defendants' Constitutional Rights Under 42 U.S.C. § 1983**

¶ 24  To succeed under 42 U.S.C. § 1983, a claimant must establish that defendants: (1) violated a right secured by the Constitution or laws of the United States; (2) acted under the color of state law in doing so; and (3) caused damages to the claimant. *Rinker v. Sipler*, 264 F.Supp.2d 181, 186 (M.D. Pa. 2003). The traditional definition of "acting under color of state law" requires that the defendant exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Davis v. John*, 482 F.Supp.3d 1207, 1216 (C.D. Cal. 2020) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). A suit under § 1983 may be dismissed if the defendant's conduct did not occur under color of state law. *Leeds v. Melts*, 85 F.3d 51, 53 (2d Cir. 1996).

¶ 25  It is possible that a private person, not a state actor, may become liable under § 1983 under limited circumstances:

> A person may become a state actor by conspiring with a state official, [*Dennis v. Sparks*, 449 U.S. 24, 28 (1980)], or by engaging in joint activity with state officials, *Sable Communications v. Pacific Tel. & Tel. Co.*, 890 F.2d 184, 189 (9th Cir.1989) (defendant sought the aid of law enforcement officials in order to use further procedures that would violate the plaintiff's first amendment rights). A person may also become a state actor by becoming so closely related to the State that the person's actions can be said to be those of the State itself. That might be found because the nexus is so close as to cause the relationship to be symbiotic. *Burton v.*

---

[4] Count IX is only a Crossclaim against VIPA Defendants alleging a breach of good faith and fair dealing. VIPA Defendants have not moved to dismiss this Count, which is not considered herein.

> *Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961); *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 569 (9th Cir. 1987). It might also be for such other reasons as performing public functions or being regulated to the point that the conduct in question is practically compelled by the State. *Vincent*, 828 F.2d at 568–69.

*Price v. Hawaii*, 939 F.2d 702, 708-09 (9th Cir. 1991) (short cite replaced with full cite for clarity).

¶ 26    However, as one court opined, "merely complaining to the police does not convert a private party to a state actor . . . [j]oint action requires a substantial degree of cooperative action." *Sable Commc'ns of Cal. Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 189 (9th Cir. 1989) (internal citation and quotes omitted) (emphasis added). But it is not necessary to establish the existence of a conspiracy to violate the claimant's constitutional rights. *See id.*

### Counterclaim against Plaintiffs.

¶ 27    Count I alleges that VIPA "intentionally enforced the terms of its leases, FAA regulations, the Minimum Standards, and other VIPA rules and regulations in a discriminatory manner against the BIA Defendants," in violation of 42 U.S.C. § 1983. Counterclaim and Crossclaim ¶ 99. In their Motion, Plaintiffs argue that this Count cannot be asserted against them as 42 U.S.C. § 1983 provides a statutory means of holding government officials personally liable for action taken under the color of law – and they are not government officials. Plaintiffs' Motion at 5.

¶ 28    In their Opposition, Bohlke Defendants argue that § 1983 does indeed apply to Plaintiffs because "a cause of action can lie under 42 U.S.C. § 1983 against a private party" if "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting under color of law for purposes of the statute." Opposition to Plaintiffs at 5-6 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (internal quotation marks omitted)). However, Bohlke Defendants concede that the title and factual allegations of their Counterclaim do not refer to Plaintiffs by name and could reasonably be found to be insufficiently clear and, as such, request that if the Court finds the pleading insufficiently definite that they be granted leave to amend. *Id.* at 6. Plaintiffs reply that Bohlkes' position still cannot prevail as even if § 1983 could be made applicable to them, "there is no act alleged to have been done by Plaintiffs which amounts to a violation of 42 U.S.C. § 1983 . . . ." Reply at 3.

¶ 29    Count I is flawed more substantially than by merely not referring to Plaintiffs by name. There are no facts alleged in the Count I Counterclaim that could constitute a viable § 1983 claim against Plaintiffs. By its plain language, Count I alleges that VIPA enforced contracts and regulations under its purview in a discriminatory manner. Counterclaim and Crossclaim ¶ 99. Nothing in the allegations of Count I puts Plaintiffs on notice as to the actions in which they were allegedly engaged. Since Bohlke Defendants state that they can supply factual allegations to remedy this shortcoming, and there is a strong preference for courts to decide cases on their merits

rather than on procedural shortcomings, the Court will grant Plaintiffs' Motion for a more definite statement and give Bohlke Defendants leave to amend their Counterclaim as to Count I. *See Powell v. FAM Protective Servs., Inc.*, 72 V.I. 1029, 1043; 2020 VI 3, ¶21 (V.I. 2020).

### Crossclaim against VIPA Defendants.

¶30    VIPA Defendants argue in their Motion that Count I must be dismissed due to the two-year statute of limitation. VIPA Motion at 7-8. However, Bohlke Defendants argue that this position is "based on a misreading of the crossclaim allegations." Opposition to VIPA at 7. Bohlke Defendants state that their allegations describe conduct that is "continuing and causing damages to this date" and they are seeking relief for "*current* actions." *Id.* (emphasis in original). Bohlke Defendants argue that actions taken more than two years in the past should not be time barred as they allege continuing violations. *Id.* Further, Bohlke Defendants argue that the claim alleged here should be sufficient to put VIPA Defendants on notice of this claim against them, permitting the opportunity to conduct discovery. *Id.* at 8.

¶31    VIPA Defendants are correct that there is a two-year statute of limitations to bring a § 1983 claim by virtue of the statutory limitations period to bring a personal injury claim in this jurisdiction. *Callwood v. Questel*, 883 F.2d 272, 274-55 (3d Cir. 1987); *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 5 V.I.C. § 31(5)(A).

¶32    To determine when this action accrued, we look to federal, not territorial law. *Wallace*, 549 U.S. at 388; *Disabled in Action of Pa. v. S.E. Pa. Transp. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008). The Court does look to Virgin Islands law for tolling rules. *Wallace*, 549 U.S. at 394. The standard rule regarding the commencement of the limitation period is "that accrual occurs when the plaintiff has a complete and present cause of action." *Id.* at 388 (internal citation, quotes, and brackets omitted); *Disabled in Action of Pa.*, 539 F.3d at 209. In the absence of a contrary directive from Congress, the Court should apply the "federal discovery rule" to determine accrual of this claim based on the federal statute. That rule provides that a cause of action accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that form the basis for the claim.[5] *Disabled in Action of Pa.*, 539 F.3d at 209.

¶33    There are, however, exceptions to the standard accrual rule. For example, in *Wallace*, the Supreme Court determined that the statute of limitations for a false imprisonment action did not begin to run when the plaintiff was falsely imprisoned, but rather when the imprisonment came to an end. *See Wallace*, 549 U.S. at 389.

---

[5] For accrual of § 1983 claims, the Court is to look to federal law and as a default apply the federal discovery rule. The Virgin Island discovery rule is inapplicable. *See Lockhart v. Gov't of the V.I.*, Nos. 05-125, 05-126, 05-127, 2009 WL 812266, at *6 (D.V.I. Mar. 26, 2009) ("under federal law controlling the accrual of § 1983 claims, there would be no need to consider whether the Virgin Islands discovery rule applies . . . ."); *see also Wallace*, 549 U.S. at 388, *Berry v. St. Thomas Gas Co.*, 36 V.I. 64 (V.I. Terr. 1997), *Cruz v. Roberson*, Civ. No. 2015-50, 2018 WL 4440663, (D.V.I. Sept. 17, 2018), *Rivera v. DeJongh*, Civil No. 2008-128, 2011 WL 703926 (D.V.I. Feb. 21, 2011).

¶ 34    In this case, Bohlke Defendants argue that the Court should apply the "continuing violations" doctrine which states that "when a claim involves continuing or repeated conduct, the limitations period does not begin to run until the date of the last injury or when the wrongful conduct ceased." Opposition to VIPA at 7-8 (quoting *Anthony v. FirstBank V.I.*, 58 V.I. 224 (V.I. 2013)). In order to apply this doctrine, "[t]he plaintiff must make a threshold showing that his claim involved continual *unlawful acts*, not continual *ill effects* from an original violation before a court will consider whether the equitable doctrine is available." *Anthony*, 58 V.I. at 230 (internal citation and quotation marks omitted) (emphasis in original).

¶ 35    Construing the allegations in the light most favorable to the nonmoving party, the Crossclaim appears to state a claim upon which relief can be granted. Therefore, VIPA Defendants' Motion will be denied as to Count I.[6] This denial of VIPA Defendants' Motion as to this Count, however, should not be interpreted to limit or prevent VIPA Defendants from affirmatively pleading in their response to the Crossclaim that the statute of limitations has run, as discovery may provide additional facts that could provide grounds for a dispositive motion later in these proceedings.

¶ 36    In summary, the Court will grant Plaintiffs' Motion for a more definite statement as to Count I but will deny their Motion seeking dismissal of Count I and will deny VIPA Defendants' Motion as to Count I in its entirety.

**II.    Counterclaim and Crossclaim Count II: Conspiracy to Violate BIA Defendants' Constitutional Rights Under 42 U.S.C. § 1983**

¶ 37    A civil conspiracy is "an agreement or combination to perform a wrongful act, or lawful act by unlawful means, that results in damage to the plaintiff." *Isaac v. Crichlow*, 63 V.I. 38, 64 (V.I. Super. 2015). It is not necessary for there to be an express agreement among the conspirators as long as the participants in the conspiracy share a general objective or the same motives for desiring the same conspiratorial result. *Id.* (internal citation and quotes omitted).

¶ 38    There can be no liability for civil conspiracy where there is no liability for the act or acts underlying the conspiracy. *See Id.* (citing *Mieczkowski v. York City Sch. Dist.*, 414 F.App'x. 441 (3d Cir. 2011)). Relying on *Isaac*, the Superior Court has held that tortious conduct is a prerequisite for liability under civil conspiracy. "A person is subject to liability for harm resulting to a plaintiff from the tortious conduct of co-defendant when that person (1) does a tortious act in concert with the co-defendant pursuant to a common design with him; (2) knows that the co-defendant's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the co-defendant to so conduct him or herself; or (3) gives substantial assistance to the co-defendant in accomplishing a tortious result and his or her own conduct, separately

---

[6] As VIPA Defendants' Motion only challenges Count I based on the statute of limitations, rather than for its substance being too vague or ambiguous, the Court denies without further discussion the Rule 12(e) portion of VIPA's Motion as it applies to Count I.

considered, constitutes a breach of duty to the plaintiff." *Donastorg v. Daily News Publ'g Co., Inc.*, 63 V.I. 196, 330 (V.I. Super. 2015).

### Counterclaim against Plaintiffs.

¶ 39    Count II is thin in its factual allegations, summarily realleging previously stated facts and incorporating them, claiming that based on those facts, Plaintiffs and VIPA Defendants "have combined and conspired to violate the BIA Defendants' rights under the Fourteenth Amendment to equal protection under the law," and that they have been damaged by those actions. Counterclaim and Crossclaim ¶ 103. As with Count I, Plaintiffs argue that as private individuals, they could not commit conspiracy to violate Bohlke Defendants' constitutional rights. Plaintiffs' Motion at 6.

¶ 40    Plaintiffs further argue that civil conspiracy "is the agreement to commit a tortious act in concert with another which results in harm to a third person" and that no liability may be found where there is no liability for the act underlying the conspiracy. *Id.* (citing *Isaac*, 63 V.I. at 65). Plaintiffs argue that Bohlke Defendants fail to make an allegation that their "constitutional rights were actually violated such that harm resulted" and, therefore, there can be no conspiracy. *Id.*

¶ 41    Conversely, Bohlke Defendants argue that the claim includes factual allegations that their rights were violated as a result of "discrimination by VIPA" that caused them the harm of "unfairly incur[ing] millions of dollars in expenses and investment commitments." Opposition to Plaintiffs at 6. Bohlke Defendants further argue that § 1983 can be applied to private individuals when "that private party is involved in conspiracy with a state actor to violate constitutional rights." *Id.* at 7.

¶ 42    As is true regarding Count I, it is possible for private persons, as Plaintiffs here, to act under "the color of law" such that they can be liable under § 1983 for violating one's constitutional rights. However, sufficient facts must be alleged and proven to permit a finding that private individuals acted under the color of law. *See Price*, 939 F.2d at 708-09. As with Count I, where the Counterclaim failed to allege facts to state a claim of liability against Plaintiffs under § 1983, similarly Bohlke Defendants have failed to allege facts that would support a conspiracy claim against Plaintiffs. For the same reasons stated as to Count I, the Court will grant Plaintiffs' Motion as to their request for a more definite statement as to Count II but will deny the Motion seeking to dismiss Count II.

### Crossclaim against VIPA Defendants.

¶ 43    VIPA Defendants argue that Bohlke Defendants fail to state a claim upon which relief can be granted because they only allege "'conspiracy,' devoid of any actual violation." VIPA Motion at 8 (citing *Isaac*, 63 V.I. at 65). They assert that "[Bohlke] Defendants have entirely failed to allege that their rights were actually and legitimately violated 'such that harm resulted,'" *id.* at 8-9, and that this claim is time barred for the same reasons alleged regarding Count I, *id.* at 6-7.

Conversely, Bohlke Defendants argue that Count II is not time barred for the same reasons stated as to Count I, simply stating that "the underlying tortious conduct remains extant." Opposition to VIPA at 8-9.

¶ 44    For the same reasons as explained with regard to Count I, the Court does not find these claims time barred at this stage, but also does not forestall VIPA Defendants from pleading the statute of limitations as a defense. While Bohlke Defendants' responses to other arguments of VIPA Defendants are cursory, the facts alleged in Count I, incorporated into Count II, adequately allege that VIPA Defendants violated Bohlke Defendants' constitutional rights. Specifically, the Crossclaim sufficiently alleges that "[t]he VIPA Defendants intentionally enforced the terms of its leases, FAA regulation, the minimum Standards, and other VIPA rules and regulations in a discriminatory manner against the BIA Defendants . . . and therefore violate[d] the BIA Defendants' right to equal protection under the Fourteenth Amendment of the U.S. Constitution." Counterclaim and Crossclaim ¶¶ 98-100.

¶ 45    Bohlke Defendants also allege that harm resulted from this violation in the form of "significant cost, . . . interference with their business and other economic interest, and suffered other damages all in amounts to be proven through discovery and at trial in this matter." *Id.* ¶ 101. However, this Count as pled fails to allege a conspiracy as it fails to allege facts that would make § 1983 applicable to Plaintiffs – the parties with whom the VIPA Defendants are alleged to have conspired. Therefore, the Court will grant VIPA Defendants' Motion for a more definite statement as to Count II of the Crossclaim but will deny it as to the prayer for dismissal.

¶ 46    In summary, the Court will grant Plaintiffs' Motion for a more definite statement as to Count II but will deny the Motion to dismiss Count II. The Court will grant VIPA Defendants' Motion for a more definite statement as to Count II but will deny the Motion to dismiss Count II.

### III. Counterclaim and Crossclaim Count III: Violation-of and Conspiracy to Violate the Virgin Islands Anti-Monopoly Law 11 V.I.C. 1501 *et seq.*

#### Counterclaim against Plaintiffs.

¶ 47    Count III alleges that "Plaintiffs and the VIPA Defendants have directly violated the Virgin Islands Antimonopoly Law, 11 V.I.C. [§] 1501 *et seq.*, including but not limited to engaging in some of or all of the enumerated prohibited acts set forth in 11 V.I.C. [§] 1503." Counterclaim and Crossclaim ¶ 103. Title 11 V.I.C. § 1503 enumerates that persons violate the Virgin Islands Antimonopoly Law who:

> (1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:
>> (a) for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the parties

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*  Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 12 of 32

2022 VI SUPER 20

thereto, or the fee charged or paid for any service performed or received by the parties thereto;

(b) fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect stated in paragraph (a) of subsection (1);

(c) allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service; or

(2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce; or

(3) Establish, maintain, use or attempt to acquire monopoly power over any substantial part of trade or commerce of the United States Virgin Islands for the purpose of excluding competition or of controlling, fixing, or maintaining prices in such trade or commerce; or

(4) Lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, or services, whether patented or unpatented, for use, consumption, enjoyment, or resale, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodity or service of a competitor or competitors of the lessor or seller, where the effect of such lease, sale or contract for such sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce; or

(5) It shall be unlawful for any person, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade, quality and quantity where such commodities are sold for use, consumption, or resale in the United States Virgin Islands, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce in the United States Virgin Islands, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.

¶ 48   Plaintiffs argue that Count III fails to put them on notice of what conduct violated the Virgin Islands Antimonopoly Act. Plaintiffs' Motion at 7. They assert that Bohlke Defendants applied every factual allegation to all of the potential causes of action in § 1503 – rendering Count III so vague and ambiguous that Plaintiffs cannot reasonably prepare a response and that, as a result, Count III should be dismissed or, at a minimum, a more definite statement should be required. *Id.* at 8.

¶ 49   Conversely, Bohlke Defendants assert that Count III should not be dismissed on account of their failure to identify which subsection of 11 V.I.C. § 1503 Plaintiffs violated, as "[t]he Plaintiffs are sophisticated and fully aware of the consequences of their actions, both alone and

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*    Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 13 of 32

2022 VI SUPER 20



in concert with the VIPA Defendants . . . ." Opposition to Plaintiffs at 7. Bohlke Defendants also argue that the Counterclaim "identifies numerous actions that violate the Act, and it is not necessary that the particular subsections be specified in order for the Plaintiffs to understand the claims brought against them." *Id.* Additionally, Bohlke Defendants argue that Count III's allegation that "the Plaintiffs conspired and acted in concert with VIPA in the monopolistic and anti-competitive activities" sufficiently alleges a cause of action for conspiracy to violate the Antimonopoly Law. *Id.* at 8. In their Reply, Plaintiffs state that Count III only makes factual allegations against the VIPA Defendants – not Plaintiffs – and therefore must be dismissed with respect to Plaintiffs. Reply at 6.

¶ 50    The question before the Court is whether, as pled, Count III adequately puts Plaintiffs on notice of Bohlkes' claim against them, as required by V.I. R. Civ. P. Rule 8(a)(2), and is intelligible enough that Plaintiffs can frame a response or denial without risking prejudice, as required by V.I. R. Civ. P. 12(e). *See Wintberg Heights Condo. Owners Ass'n, Inc.*, 72 V.I. at 296 (citing *Thorp v. District of Columbia*, 309 F.R.D. 88 (D.D.C. 2015)). Importantly, courts have held that while "a complaint need not plead facts to support each element of the claim" it does need to advise the defendants "of the transaction or occurrence on which the claim is based" and "identify the claim, and recite its elements." *Oxley*, 2018 WL 4002726, at *5. While some courts have emphasized that a Rule 12(e) motion should not be used to ascertain a plaintiff's legal theories, *e.g. Bryson v. Bank of New York*, 584 F.Supp. 1306, 1309 (S.D.N.Y. 1984) ("A Rule 12(e) motion should not be used simply to ascertain a plaintiff's legal theories"), courts in the Virgin Islands have held "that a complaint should recite the elements of a common law claim so as to make clear that legal theory presented . . . ." *Oxley*, 2018 WL 4002726, at *5.

¶ 51    As with each of the counts of their Counterclaim, Bohlke Defendants "repeat and reallege" as to Count III, "the facts recited in the paragraphs above and incorporate them to the extent they are applicable to the following paragraphs and the claims asserted by the BIA Defendants therein." Counterclaim and Crossclaim ¶ 105. Those recited facts comprise at least 96 paragraphs over some 24 pages yet fail to specify which facts they allege violate which subsections of the Antimonopoly Law. As such, Bohlke Defendants have not sufficiently identified their claim, or minimally, its elements as required under V.I. R. Civ. P. 8(a)(2). Such failure is consequential, despite their assertion that Plaintiffs are sophisticated and should be able to wade through the Counterclaim's voluminous allegations to discern for themselves which apply to Count III. The Court need not ascertain whether the facts presented put Plaintiffs on notice of the "transaction or occurrence on which the claim is based" as the Counterclaim has failed to adequately state a claim under the Antimonopoly Law. *See Oxley*, 2018 WL 4002726, at *5.

¶ 52    Bohlke Defendants' failure to specify which facts violate which subsection(s) of the law constitutes a failure to state a claim. Yet, rather than grant dismissal of the claim of statutory violation on account of this pleading defect, the Court will provide Bohlke Defendants the chance

to rectify the deficiencies by an amended pleading. As such, Plaintiffs' Motion will be denied in part – as it seeks dismissal – but granted in part, as it seeks a more definite statement.[7]

### Crossclaim against VIPA Defendants.

¶ 53    VIPA Defendants argue that Count III fails to put them "on notice of what conduct violated the Virgin Islands Antimonopoly Act." VIPA Motion at 9. VIPA Defendants allege that it is inadequate for Bohlke Defendants to simply state that Defendants violated the Virgin Islands Antimonopoly Law without specifying which alleged facts violated which subsections. *Id.* VIPA Defendants argue they cannot "even begin to decipher [Bohlke] Defendants' purported claims, let alone prepare a response . . .." *Id.* at 11.

¶ 54    Conversely, Bohlke Defendants argue "[t]he crossclaims in the Answer identify numerous actions that violate the Act, and it is not necessary that the particular subsection be specified in order for the VIPA Defendants to understand the claims brought against them." Opposition to VIPA at 9. In response to VIPA's Motion, Bohlke Defendants list specific paragraphs that allege "discrimination in the enforcement of applicable regulations" and others that allege "VIPA allowing the Plaintiffs to continue selling fuel without having to comply with regulations." *Id.* Bohlke Defendants argue that both these allegations "describe actions that 'injure, destroy, or prevent competition' as described in § 1503(5)," and further that "the crossclaim throughout alleges that the VIPA Defendants conspired and acted in concert with the Plaintiffs in the monopolistic and anti-competitive activities," constituting a conspiracy to violate the Antimonopoly Law. *Id.*

¶ 55    For the reasons stated above in relation to Plaintiffs' Motion, Count III fails to adequately identify facts to state a claim and its elements as required by V.I. R. Civ. P. 8(a)(2) as to VIPA. *See Oxley*, 2018 WL 4002726, at *5. As the specific legal basis for the claim has not been pled, the Court does not reach a consideration about the sufficiency of the facts to provide notice. So, VIPA Defendants' motion will be denied in part – as it seeks dismissal – but granted in part – as it seeks a more definite statement to give Bohlke Defendants an opportunity to specify a claim.

¶ 56    Therefore, both Plaintiffs' and VIPA Defendants' Motions will be denied as to dismissal but granted as to more definite statements.

---

[7] It may be that within the dozens of pages and scores of paragraphs of the Counterclaim and Crossclaim, Bohlke Defendants have set out allegations of fact sufficient to put Plaintiffs on notice as to the claims against them regarding particular counts. However, in a pleading so voluminous, where none of the factual allegations is identified as related to any particular count, Bohlke Defendants leave Plaintiffs and VIPA Defendants to speculate as to which facts are alleged to support which claims. Where a pleading party elects to inundate other litigants with copious factual and legal allegations, that party will be required to provide reference in each count as to which factual allegations it alleges support that count. Bohlke Defendants will be required to do so in their amended pleading to be filed as a result of the Order issued herewith.



### IV. & V. Counterclaim and Crossclaim Count IV: Intentional and Negligent Interference-with and Conspiracy to Interfere-with the Existing Economic Interests of BIA Defendants; and

### Counterclaim and Crossclaim Count V: Intentional and Negligent Interference with and Conspiracy to Interfere-with the Prospective Economic Interests of BIA Defendants[8]

¶ 57    Count IV alleges that Plaintiffs and VIPA Defendants have "intentionally and negligently interfered with and conspired to interfere-with the **existing economic interest** of the BIA Defendants . . ." and lists eight different ways that has been done. Counterclaim and Crossclaim ¶ 110 (A.-H.) (emphasis added). Count V alleges that Plaintiffs and VIPA Defendants "intentionally and negligently interfered with and conspired to interfere-with the **prospective economic interest** of the BIA Defendants . . .," and alleges eight ways Bohlke Defendants claim that was done. Counterclaim and Crossclaim ¶ 114 (A.-H.) (emphasis added).

<u>Counterclaim against Plaintiffs</u>.

¶ 58    Plaintiffs' Motion argues that "there is no cause of action for negligent interference with contracts, economic interests or prospective business relationships." Plaintiffs' Motion at 9-10 (citing *Gerard v. Dempsey*, No. SX-09-CV-076, 2016 WL 9503684, at *6 (V.I. Super. Aug. 22, 2016)). Plaintiffs allege that "as a matter of law all such claims contained in Counts IV and V must be dismissed for failure to state a claim." *Id.* at 10. Further, Plaintiffs argue that allegations of intentional interference in Counts IV and V must fail against them because "the factual allegations regarding these claims are directed at Defendant VIPA's actions – not Plaintiffs." *Id.* In the alternative to dismissal, Plaintiffs argue that "Bohlke Defendants must provide a more definite statement and eliminate those causes of action which are not cognizable . . .." *Id.* at 10-11. Plaintiffs further argue that in pleading interference with existing economic interests, there are several different causes of action Bohlke Defendant could be attempting to assert, and it is unclear which one(s) they intend. *Id.* at 11-12. Plaintiffs argue that the lack of specificity as to any of these potential asserted particular claims (in addition to non-cognizable claims) is such that they "have no idea how to respond" as they don't know "what [Bohlke] Defendants are claiming and all of the factual allegations . . . are directed at the acts of Defendant VIPA – not Plaintiffs." *Id.* at 12-13.

¶ 59    Bohlke Defendants respond that *Gerard* treated a count pled as "Negligent Interference with Contract" as "intentional interference with contract relations" in the Court's "'general preference to elevate substance over form.'" Opposition to Plaintiffs at 8 (citing *Gerard*, 2016 WL 9503684, at *6). In relying on that precedent, Bohlke Defendants argue that the Court should construe Counts IV and V "as alleging intentional interference with both existing (Count IV) and

---

[8] Counts IV and V are addressed together by both pending Motions and accompanying filings and are so treated here.

prospective (Count V) business relations." *Id.* at 8-9. Bohlke Defendants argue that Plaintiffs are attempting to create uncertainty about their claims when none exists, and that they have alleged sufficient facts to support "intentional interference with existing contractual relations" and "intentional interference with prospective business relations," referring to specific paragraphs of the Counterclaim and Crossclaim to support their assertion. *Id.* at 9, 10-11. While Bohlke Defendants argue that their claims are adequately pled, they request the opportunity to rectify by amendment any shortcoming the Court finds. *Id.* at 11.

¶ 60 In their Reply, Plaintiffs argue that Bohlke Defendants would need to amend their Counterclaim to allege in Counts IV and V intentional interference with existing contractual relations and intentional interference with prospective business relations, but that even so amended, the counts would still be subject to dismissal as "there are no factual allegations to put Plaintiffs on notice . . .." *Id.* at 6-7. Plaintiffs argue as to these counts also that the factual allegations relied upon by Bohlke Defendants are only directed to VIPA's actions – not Plaintiffs.' *Id.* at 7-8. Further, Plaintiffs argue that since they cannot be held liable for either of the underlying claims in Counts IV and V, they also cannot be held liable for conspiracy as to either of those counts. *Id.* at 8.

¶ 61 The Court concurs that the negligence claims within Counts IV and V are not viable. *See Gerard*, 2016 WL 9503684, at *6. Consistent with *Gerard* and precedent cited therein, it is appropriate to elevate the substance of the filing over its form and to construe Count IV as alleging "intentional interference with existing economic interests" and Count V as alleging "intentional interference with prospective economic interests." Plaintiffs' Motion will be granted as to claims of negligent interference with existing and prospective contractual relations in Counts IV and V which will be dismissed.

¶ 62 Accepting Bohlke Defendants' claims on these counts as alleging intentional interference with existing and prospective economic interests, the Court considers whether there have been sufficient factual allegations presented to put Plaintiffs on notice of the claims against them as required by V.I. R. Civ. P. 8(a)(2). Viewing all the factual allegations as true and construing the pleading liberally as required, *see Yearwood Enters., Inc.*, WL 2709831, at *1, the Court finds that Plaintiffs have been adequately put on notice as to Bohlkes' claims against them on these counts. Any lack of specificity with regard to the facts is better addressed in discovery not in a V.I. R. Civ. P. 12(e) motion. *See Wintberg Heights Condo. Owners Ass'n, Inc.*, 72 V.I. at 296. Therefore, except with reference to claims of negligent interference with existing and prospective economic interests, Plaintiffs' Motion will be denied as to Counts IV and V.[9]

---

[9] Bohlke Defendants' Counterclaim and Crossclaim seeks relief for interference with its existing and prospective economic interests. In briefing the Motions, the parties refer alternately to claims of interference with contractual relations and interference with business relations, drawing no distinctions and implicitly equating those claims with the pled claims of interference with economic interests. The Court also draws no distinctions among the names used for these claims and considers them as the same claims seeking the same relief.




### Crossclaim against VIPA Defendants.

¶ 63    VIPA Defendants' Motion argues that Bohlke Defendants have failed to demonstrate that their interference with prospective business relations (Count V) "was the result of either improper means or an improper motive." VIPA Motion at 12-13. VIPA Defendants argue that "it is entirely unclear what causes of action and/or how many causes of action the Bohlke Defendants have asserted by pleading interference with 'existing economic interest.'" *Id.* at 13-14. VIPA Defendants assert that "no court in the Virgin Islands has recognized a claim for negligent interference with contractual relations" – consistent with multiple other jurisdictions. *Id.* at 14-15 (internal citations and quotation marks omitted). VIPA Defendants state that "Counts IV and V must be dismissed, or in the alternative, the [Bohlke] Defendants must provide a more definite statement in order for VIPA to adequately formulate a response." *Id.* at 15. VIPA Defendants also assert that these counts are barred by the applicable statute of limitations. *Id.* at 15-16.

¶ 64    Bohlke Defendants respond that the Court should follow *Gerard* and construe their negligent interference claims as viable, elevating substance over form, to determine that Counts IV and V should be construed as alleging intentional interference with existing and prospective business relations, respectively. Opposition to VIPA at 10. Bohlke Defendants argue that VIPA Defendants claim confusion where none exists, as their pleading alleges all the necessary facts to sustain both causes of action. *Id.* at 10-11. Bohlke Defendants also argue that there are ample factual allegations that VIPA Defendants acted in concert with Plaintiffs to cause interference – providing notice for the conspiracy claims. *Id.* at 12. While Bohlke Defendants argue that their claims are adequately alleged, they alternatively ask for leave to remedy any deficiencies that the Court finds. *Id.* at 12-13.

¶ 65    VIPA Defendants' Motion asserts that they are unsure what causes of action Bohlke Defendants seek to pursue by pleading "interference with existing economic interests." *See* VIPA Motion at 13. They also argue the lack of viability of the negligence claims. *Id.* at 14-15. For the reasons stated in relation to Plaintiffs' Motion, the Court construes Count IV as "intentional interference with existing economic interests," and Count V as intentional interference with prospective economic interests," eliminating any uncertainty related to these claims.

¶ 66    VIPA Defendants also argue that Bohlke Defendants failed to demonstrate the existence of an improper motive in the allegation of interference with prospective business relations. Yet, V.I. R. Civ. P. 8(a)(2) does not require a complaint to plead facts in support of each element of a claim, it need only identify the transaction or occurrence upon which the claim is based. *Oxley*, 2018 WL 4002726, at *5. Whether such facts exist or can be proven are issues better dealt with through discovery – not though a motion to dismiss. Lastly, as to the arguments related to the statute of limitations, the Court employs the same reasoning as discussed in Count I and will deny the Motion to Dismiss on statute of limitations grounds This denial of dismissal at the pleading stage does not prevent VIPA Defendants from affirmatively asserting the statute of limitations as a defense in their responsive pleading. Therefore, VIPA Defendants' Motion will be granted as

to claims of negligent interference with existing and prospective economic interests in Counts IV and V which will be dismissed. Otherwise, the Motion will be denied as to Counts IV and V.

¶ 67    In summary, the Court will grant both Plaintiffs' and VIPA Defendants' Motions as to claims of negligent interference with existing and prospective economic interests in Counts IV and V. Otherwise, both Motions will be denied.

### VI.    Counterclaim and Crossclaim Count VI: Making and Conspiracy to Make Intentional and Negligent Misrepresentations to BIA Defendants

¶ 68    In Count VI, Bohlke Defendants assert that "the Plaintiffs and the VIPA Defendants have intentionally and negligently made and conspired to make material misrepresentations of fact to and regarding the BIA Defendants, inducing the reliance of the BIA Defendants to their detriment . . .," providing a nonexclusive list of four alleged incidents. Counterclaim and Crossclaim ¶ 118 (A.-D.).

#### Counterclaim against Plaintiffs.

¶ 69    In their Motion, Plaintiffs argue that every "factual allegation in support of Count VI is directed solely at Defendant VIPA and makes no mention of Plaintiffs" and therefore fails to show that Bohlkes are entitled to relief from Plaintiffs for intentional or negligent misrepresentation. Plaintiffs' Motion at 13. They argue that since there can be "no conspiracy to commit a tort if there is no tort, Count VI must be dismissed in its entirety for failing to state a claim" as to Plaintiffs. *Id.* (citing *Isaac*, 63 V.I. at 65).

¶ 70    In their Opposition, Bohlke Defendants argue they have alleged "that VIPA made material misrepresentations of fact during its lease negotiations with the BIA Defendants, and that the VIPA Defendants agreed with the Plaintiffs to make such representations." Opposition to Plaintiffs at 12. Bohlke Defendants also argue that they "make it clear that the VIPA Defendants knew the representations were false because they knew that the Plaintiffs would not be held to the same standards." *Id.* Bohlke Defendants further allege "that their reliance on the misrepresentations caused them to incur unfairly substantial expenses." *Id.* They argue that they have adequately alleged that "frequently the Plaintiffs and VIPA acted in concert" and that the Counterclaim contains "more than sufficient facts to put the Plaintiffs on notice of the nature of and grounds for the claim." *Id.* If the Court does not find the allegations sufficiently clear or definite, Bohlke Defendants request leave to amend their pleading. *Id.*

¶ 71    In Reply, Plaintiffs argue that the factual allegations Bohlke Defendants rely upon prove "there is not a single allegation that *Plaintiffs* made a misrepresentation to Bohlke Defendants – all of the allegations of misrepresentation are against VIPA." Reply at 8 (emphasis in original). As such, Plaintiffs argue that they "cannot be liable for intentionally or negligently making misrepresentations to Bohlke Defendants even assuming all Bohlke Defendants['] allegations are

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*      Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 19 of 32

2022 VI SUPER 20



true," and likewise cannot be liable for conspiring to making such representations. *Id.* at 8-9 (citing *Isaac*, 63 V.I. at 65).

¶ 72    The elements necessary to state a tort claim of intentional misrepresentation have been articulated by the Supreme Court after a *Banks* analysis,[10] as: (1) misrepresentation of a material fact, opinion, intention, or law; (2) that the defendant knew or had reason to belief it was false; (3) was made with the purpose of inducing the plaintiff to act or refrain from acting; (4) the plaintiff justifiably relied on it, and (5) plaintiff suffered a pecuniary loss. *See Jahleejah Love Peace v. Banco Popular de P.R*, 2021 VI 15, ¶ 11 (V.I. 2021).

¶ 73    Bohlke Defendants also assert the tort of negligent misrepresentation, which has not had the benefit of a *Banks* analysis by the Supreme Court. However, in *Merchants Commercial Bank v. Oceanside Vill., Inc.*, the Superior Court conducted a thorough *Banks* analysis and adopted elements of negligent misrepresentation representing the soundest rule for the Virgin Islands, as follows: "one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest, supplies false information for the guidance of others, is subject to liability for pecuniary loss caused to those others due to the others' justifiable reliance on the information, but only if he or she failed to exercise reasonable care or competence in obtaining or communicating the information." 64 V.I. 3, 28 (V.I. Super. 2015). The *Merchants* court noted that this rule "mirrors the language of the rule previously relied upon by courts in the Virgin Islands, and therefore fosters consistency concerning the scope of a defendant's liability." *Id.* This Court adopts the *Banks* analysis from *Merchants*, such that a claim for negligent misrepresentation must allege: (1) the defendant supplied false information to the plaintiff for his guidance; (2) that defendant did so in the course of its business; (3) that defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (4) that plaintiff justifiable relied on the information, and (5) that plaintiff's reliance caused pecuniary harm. *See Fuller v. Roswell Props. LLC, Ltd.*, No. ST-16-CV-438, 2018 WL 1176867, at *5 (V.I. Super. March 5, 2018); *Turnbull v. Univ. of the V.I.*, No. ST-07-CV-239, 2016 V.I. LEXIS 22, at *13 (V.I. Super. Mar. 2, 2016); *Merchs. Commercial Bank*, 64 V.I. at 28.

¶ 74    Consistent between the claims of intentional misrepresentation and negligent misrepresentation is that they are both brought against the party that communicated the information. *Compare Fuller*, 2018 WL 1176867, at *5, *and Jahleejah Love Peace*, 2021 WL 4228698, at *2. In both Bohlke Defendants' misrepresentation claims, all the factual allegations claim that information was communicated to them by VIPA – never by Plaintiffs. *See generally* Counterclaim and Crossclaim; Opposition to Plaintiffs. This omission is not rehabilitated by the allegation that "frequently the Plaintiffs and VIPA acted in concert." Opposition at 12.

---

[10] So named for the Supreme Court's paradigm-shifting holding in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). This analysis weighs "three non-dispositive factors" to determine Virgin Islands common law, considering "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Gov't of the V.I. v. Connor*, 60 V.I. 597, 600 (V.I. 2014) (internal citation omitted).

¶ 75    Count VI fails to allege that Plaintiffs ever communicated misrepresentations to Bohlke Defendants, an essential element required to make out a claim of misrepresentation, either intentional or negligent. Neither have Bohlke Defendants alleged any of the three scenarios by which liability may attach for a co-defendant's tortious conduct.[11] Additionally, as determined with reference to Count II, there can be no claim of civil conspiracy without a showing of liability for the underlying claim either by this party or by a co-defendant. *See Donastorg*, 63 V.I. at 330. Due to this complete dearth of supporting factual allegations against Plaintiffs – either for direct actions taken by Plaintiffs or allegations that would support a finding of co-defendant liability under *Donastorg*, the Court will grant the Plaintiffs' Motion to Dismiss Count VI.

Crossclaim against VIPA Defendants.

¶ 76    VIPA Defendants argue that "[p]ursuant to Federal Rule of Civil Procedure 9(b), in alleging fraud or misrepresentation, a party must state with **particularity** the circumstances constituting fraud or misrepresentation." VIPA Motion at 16 (emphasis in original). VIPA Defendants assert that to make out a claim for intentional misrepresentation "a complainant must demonstrate: (1) a knowing misrepresentation of a material fact, (2) intent by the defendant that the plaintiff would rely on the false statement, (3) actual reliance, and (4) detriment as a result of that reliance." *Id.* (citing *Hodge v. Nat'l Rural Utils. Coop. Fin. Corp.*, No. 13-CV-00032, 2014 WL 1757229 (D.V.I. April 28, 2014)) (internal quotation marks omitted).

¶ 77    VIPA Defendants also argue that to make out a claim of negligent misrepresentation, a claimant must allege that: "(1) the defendant made a representation that was false; (2) the defendant should have known that the representation was false; (3) the plaintiff relied on the representation; (4) the plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information contained in the representation. VIPA Motion at 16-17 (citing *Hodge*, 2014 WL 1757229, at *6). VIPA Defendants further argue that "[t]he alleged misrepresentation must be 'factual in nature and not promissory or relating to future events that might never come to fruition.'" *Id.* at 17 (quoting *Hodge*, 2014 WL 1757229, at *7). They claim that Bohlke Defendants did not adequately plead Count VI as "[t]here are no set of facts contained within the Crossclaim directly attributing a fraudulent misrepresentation made by VIPA or MAPP" and there are no alleged facts "which purport to assert a claim of misrepresentation." *Id.* The factual allegations that are made are "overzealous and conclusory" and there are no "allege[d] facts in support of an agreement between VIPA and MAPP and the Plaintiffs, which is an essential element of conspiracy." As a result, VIPA Defendants urge that Count VI should be dismissed

---

[11] "A person is subject to liability for harm resulting to a plaintiff from the tortious conduct of co-defendant when that person (1) does a tortious act in concert with the co-defendant pursuant to a common design with him; (2) knows that the co-defendant's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the co-defendant to so conduct him or herself; or (3) gives substantial assistance to the co-defendant in accomplishing a tortious result and his or her own conduct, separately considered, constitutes a breach of duty to the plaintiff." *Donastorg*, 63 V.I. at 330.

with prejudice. *Id.* They also argue that Count VI must fail as it is outside the applicable statute of limitations. *Id.* at 17-18 (citing 5 V.I.C. § 31(5)(A)).

¶ 78      In Opposition, Bohlke Defendants argue that a claim for intentional misrepresentation has the elements of: "(1) misrepresentation of fact, opinion, intention or law; (2) knowledge by the maker of the misrepresentation that it was false; (3) ignorance of the falsity by the person to whom it was made; (4) an intention that the representations should be acted upon; and (5) detrimental and justifiable reliance." Opposition to VIPA at 13 (internal citations omitted). They argue that a claim for negligent misrepresentation includes elements that: "(1) the defendant supplied false information to the plaintiff's guidance; (2) the defendant did so in the course of its business; (3) the defendant failed to exercise reasonable care or competence in collecting or communicating the information; (4) the plaintiff relied on the information; and (5) the plaintiff's reliance caused pecuniary harm." *Id.* at 13-14 (internal citations omitted).

¶ 79      Bohlke Defendants argue they have adequately alleged that "VIPA made material misrepresentations of fact during its lease negotiations and in its lease documents with the BIA Defendants, that the VIPA Defendants would apply its regulatory power equally to all businesses at the Airports and that BIA would have quiet enjoyment of its leasehold interest, which included VIPA's enforcement and operation pursuant-to its own rules." *Id.* at 14. Those factual allegations "make[ ] it clear that the VIPA Defendants knew the representations were false because they knew that the plaintiffs would not be held to the same standards." *Id.* Bohlke Defendants argue that they have alleged that their reliance on these misrepresentations "caused them to incur unfairly substantial expenses." *Id.* Bohlke Defendants finally argue as to the conspiracy claim, that they have "allege[d] . . . the Plaintiffs and VIPA Defendants acted in concert" and that the Crossclaim "contains more than sufficient facts to put the VIPA Defendants on notice of the nature of and grounds for the claim." *Id.* Though Bohlke Defendants argue that the allegations in Count VI are sufficient, they request the Court grant leave to amend should the Court find them insufficient. *Id.*

¶ 80      The Court applies the standards noted above required to make out claims of intentional misrepresentation[12] and negligent misrepresentation.[13]

¶ 81      VIPA Defendants rely heavily on the Virgin Islands District Court case of *Hodge*, and the standard cited therein. This reliance is largely misplaced. *Hodge* relies on the federal procedural

---

[12] (1) misrepresentation of a material fact, opinion, intention, or law; (2) that the defendant knew or had reason to belief it was false; (3) was made with the purpose of inducing the plaintiff to act or refrain from acting; (4) the plaintiff justifiably relied on it, and (5) plaintiff suffered a pecuniary loss. *See Jahleejah Love Peace*, 2021 VI 15, ¶ 11.

[13] (1) the defendant supplied false information to the plaintiff for his guidance; (2) that defendant did so in the course of its business; (3) that defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (4) that plaintiff justifiable relied on the information, and (5) that plaintiff's reliance caused pecuniary harm. *See Fuller*, 2018 WL 1176867, at *5; *Turnbull*, 2016 V.I. LEXIS 22, at *13; *see also Merchs. Commercial Bank*, 64 V.I. at 28.



rules which were superseded by adoption of the Virgin Islands Rules of Civil Procedure. *Mills-Williams*, 67 V.I. at 585 ("effective March 31, 2017, this Court adopted the Virgin Islands Rules of Civil Procedure, which supersede all previous civil procedure rules applicable to the Superior Court, including the Federal Rules of Civil Procedure . . .."). *Hodge* applied a "plausibility" standard for factual pleadings, now inapplicable in this notice pleading jurisdiction. *Id.* As such, the persuasive value of the *Hodge* case is quite limited.

¶ 82     The Court applies the appropriate standards to ensure that the factual allegations of this count give VIPA Defendants sufficient notice, and if not, whether that deficiency can be cured by a more definite statement. As to the claims of intentional misrepresentation and negligent misrepresentation presented, the Crossclaim adequately alleges facts sufficient to provide VIPA Defendants with the required notice. Therefore, VIPA Defendants' Motion will be denied as to the underlying claims. However, the motion is granted as to the claim of conspiracy. This Count will be dismissed as to Plaintiffs since the Counterclaim failed to allege sufficient facts that Plaintiffs committed either intentional or negligent misrepresentation. That is, as Bohlke Defendants have pled insufficient facts to allege co-defendant tort liability, the Court finds that there has not been a showing that Plaintiffs were part of "an agreement or combination to perform a wrongful act," necessary for a finding of civil conspiracy, *see Issac*, 63 V.I. at 64, and "at least two persons are required to constitute a conspiracy." *Rogers v. United States*, 340 U.S. 367, 375 (1951).

¶ 83     In summary, the Court will grant Plaintiffs' Motion to dismiss Count VI and will deny VIPA Defendants' Motion to dismiss and for a more definite statement as to the underling claims of Count VI but will grant their Motion to dismiss the conspiracy portion of the claim.

### VII.     Counterclaim and Crossclaim Count VII: Creating and Conspiracy to Create a Public and Private Nuisance

¶ 84     Count VII alleges three claims, first: "Plaintiffs and the VIPA Defendants have created and conspired to create a public nuisance which is injurious and is an unreasonable interference with a right common to the general public, including conduct that involves a significant interference with the public health and public safety, conduct that is proscribed by a statute, ordinance or administrative regulation, or conduct that is of a continuing nature or has produced a permanent or long-lasting effect, which VIPA and the Plaintiffs know or have reason to know has a significant effect upon the right of the public, the BIA Defendants and their customers to safely use and enjoy the St. Croix Airport . . .," listing four nonexclusive actions in support of their claim. Counterclaim and Crossclaim ¶ 122.[14]

---

[14] A. Allowing the Plaintiffs and other entities to operate an FBO/fuel selling business at the St. Croix Airport without complying with the Minimum Standards and other safety rules and regulations and thereby creating a danger to the public and commercial users of the St. Croix Airport and the aircraft which operate there

B. Allowing the Plaintiffs to store fuel and other hazardous chemicals and construction debris on an open construction site, on bare soil which can be contaminated by leaking chemicals, directly adjacent to the BIA Defendants' improved hangar, office space, parking lot and operating areas and other areas at the St. Croix Airport

C. Allowing the Plaintiffs to have a fuel license, which specifically requires a VIPA property lease, at the Airport without

¶ 85    Second, "Plaintiffs and the VIPA Defendants have created and conspired to create a private nuisance by actual and constructive invasion of the BIA Defendants' interests in the private use and enjoyment of land and the structures/facilities thereon leased by BIA from VIPA. Such use includes the BIA Defendants' actual present use of land/structures/facilities for commercial aviation and other purposes and VIPA and the Plaintiffs know or should know that damage to the BIA Defendants' interests is resulting or is substantially certain to result from their conduct . . .," listing four nonexclusive actions in support of this claim. *Id.* at ¶ 123.[15]

¶ 86    In its third claim, Count VII alleges: "Plaintiffs and the VIPA Defendants have combined and conspired to create a public and private nuisance injurious to the property and interest of the BIA Defendants, as well as committing acts in furtherance of their common conspiracy." *Id.* at ¶ 124.

#### Counterclaim against Plaintiffs.

¶ 87    Plaintiffs argue that "Bohlke Defendants fail to allege that *any harm* occurred – let alone the type of harm required to sustain actions for public and private nuisance." Plaintiffs' Motion at 14 (emphasis in original). Plaintiffs argue that to recover for public nuisance "one must have suffered harm *of a kind different* from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." *Id.* (quoting *Bell v. Radcliffe*, No. ST-13-CV-392, 2015 WL 5773561, at *8 (V.I. Super. Apr. 30, 2015)) (internal quotation marks omitted) (emphasis in original).

---

providing services to the public, improve the public property, install safety apparatuses, or provide any of the other improvements which are the public quid pro quo for a VIPA lease and FBO/fuel-selling license

D. Allowing the Plaintiffs to have a fuel license, which specifically requires a VIPA property lease, at the Airport without paying the fuel flowage fees, Gross Receipts Taxes, and other licensing and permitting fees and insurance and provide regular proof thereof which are the economic quid pro quo to the public for a VIPA lease and FBO/fuel-selling license.

[15] A. Allowing the Plaintiffs and other entities to operate an FBO/fuel selling business at the St. Croix Airport directly adjacent to the BIA Defendants' VIPA-leased parcel and operating areas, where BIA customers are required to park and enter BIA facilities and keep their aircraft, without complying with the Minimum Standards and other safety rules and regulations and thereby creating a danger to BIA Defendants and their employees, customers and vendors which operate there

B. Allowing the Plaintiffs to store fuel and other hazardous chemicals and construction debris on an open construction site, on bare soil which can be contaminated by leaking chemicals, directly adjacent to the BIA Defendants' improved hangar, office space, parking lot and operating areas where BIA customers are required to park and enter BIA facilities and keep their aircraft, without complying with the Minimum Standards and other safety rules and regulations and thereby creating a danger to BIA Defendants and their employees, customers and vendors which operate there

C. Allowing the Plaintiffs to have a fuel license, which specifically requires a VIPA property lease, at the Airport without improving the property, installing safety apparatuses, or securing an open and unsightly construction site adjacent to where BIA customers are required to park and enter BIA facilities and keep their aircraft, and thereby creating a danger to BIA Defendants and their employees, customers and vendors which operate there

D. Allowing the Plaintiffs to have a fuel license, which specifically requires a VIPA property lease, at the Airport without paying the fuel flowage fees, Gross Receipts Taxes, and other licensing and permitting fees and insurance and provide regular proof thereof which are the economic quid pro quo to the public for a VIPA lease and FBO/fuel-selling license, while simultaneously requiring the BIA Defendants to pay these costs and accept a VIPA lease with other economically-discriminatory terms in order to retain and realize the value of the BIA Defendants' over-62-years of investment at the St. Croix Airport

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*     Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 24 of 32

2022 VI SUPER 20

¶ 88   Plaintiffs characterize Bohlke Defendants' allegations as simply stating that "Plaintiffs failed to comply with the minimum safety standards and that Plaintiffs stored chemicals which 'can' contaminate soil." But those allegations do not specify how Plaintiffs failed to comply with minimum safety standards and do not assert any impact resulting from the failure to meet those standards, such that the claim alleging public nuisance must be dismissed. *Id.*

¶ 89   Concerning the claim for private nuisance, Plaintiffs cite a pre-*Banks* Superior Court decision that mechanistically relies on the Restatement (Second) of Torts for interpretation of private nuisance, stating that "[a] private nuisance is an invasion of another's interest in the private use and enjoyment of la[nd] . . . [t]he invasion complained of must cause significant harm . . . [and t]hat harm must be of importance, involving more than slight inconvenience or petty annoyance." Plaintiffs' Motion at 15-16 (quoting *Bermudez v. V.I. Tele. Corp.*, 54 V.I. 174, 193 (V.I. Super. 2011) (citing RESTATEMENT (SECOND) OF TORTS §§ 821D, 821F, 824) (corrected misquote to accurately reflect language of the case and Restatement). Plaintiffs argue that, again, Bohlke Defendants "failed to state how *any harm* has occurred" but simply state that "Plaintiffs actions created a danger . . . but not that any harm manifested from that danger." *Id.* (citing Counterclaim and Crossclaim at 49-51). As to the claim of conspiracy, Plaintiffs argue that it must also be dismissed since Bohlke Defendants fail to state a claim for either of the underlying causes of action. *Id.*

¶ 90   Conversely, Bohlke Defendants argue that Count VII has alleged specific acts by Plaintiffs that created a "public nuisance which is injurious and is an unreasonable interference with the right of the general public to safely use and enjoy the St. Croix Airport." Opposition to Plaintiffs at 12. Specifically, Bohlke Defendants argue that they have alleged facts that "describe acts that result in unsafe fuel for airplanes, contamination of common areas of the Airport, and denial from the public of the payment by the Plaintiff of applicable fees and taxes." *Id.* at 13. Bohlke Defendants further argue that the Counterclaim alleges "additional acts by the Plaintiffs, engaged in with the agreement of VIPA, that endanger the safety of the flying public." *Id.* Contrary to Plaintiffs' contention, Bohlke Defendants argue that they have clearly alleged that they suffered harm different from that of the general public, specifically that "the Plaintiffs in failing to comply with applicable regulations compromising the safety of the public also caused the BIA Defendants to suffer discriminatory treatment and incur unfairly extensive expenses and investment commitments, all harms that are different than those suffered by the public." *Id.*

¶ 91   Bohlke Defendants argue that they have adequately alleged private nuisance: "Plaintiffs and VIPA have created and conspired to create a private nuisance by actual or constructive invasion of the land and the structure and facilities thereon leased by BIA from VIPA." *Id.* Further, "Plaintiffs' failure to follow regulations regarding the sale of fuel endangers the BIA Defendants and their customers, that the Plaintiffs' unlawful storage of fuel and hazardous chemicals creates a danger to the BIA Defendants and their customers, that the Plaintiffs' failure to comply with the standard terms of their lease with VIPA results in unsecure and unsafe construction areas posing a danger to BIA and their customers." *Id.* at 13-14 (internal citations omitted). Bohlke Defendants posit that these allegations "describe significant and important

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*　　　Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 25 of 32

2022 VI SUPER 20

harms, more than a slight inconvenience or petty annoyance . . ." as they come with a risk of "substantial physical damage." *Id.* at 14. They argue that all of these acts were "committed with the knowledge and participation of VIPA," and that all of the claims alleged in Count VII are sufficiently pled, but they ask the Court for leave to amend if any are found insufficient. *Id.*

¶ 92　In Reply, Plaintiffs reassert that Bohlke Defendants "fail to allege any harm that actually occurred and only plead that Plaintiffs' actions have the **potential** to cause harm which is insufficient to sustain a claim of public or private nuisance." Reply at 9 (emphasis in original). As to the claim of public nuisance, Plaintiffs urge that the entirety of Bohlke Defendants' argument "is that Plaintiffs failed to comply with the minimum safety standards and the Plaintiffs stored chemicals which 'can' contaminate the soil" while there is no "allegation that the chemicals contaminated the soil." *Id.* at 9-10 (citing Counterclaim and Crossclaim at 48).

¶ 93　Plaintiffs also argue that there is no "allegation that Bohlke Defendants suffered harm of a kind different from other members of the public as required for a claim of public nuisance." *Id.* at 10 (citing *Bell*, 2015 WL 5773561, at *8). Plaintiffs further argue that Bohlke Defendants' allegation that they "suffered discriminatory treatment and incurred unfairly extensive expenses and investment commitments" does not sustain a claim of public nuisance and these harms, if they do exist, have nothing to do with a public nuisance claim." *Id.* (quoting Opposition to Plaintiffs at 13) (internal quotation marks and brackets omitted).

¶ 94　As to the claim of private nuisance, Plaintiffs again argue that Bohlke Defendants only plead "potential harm" which is insufficient as the private nuisance standard requires the complained of invasion to "cause significant harm." *Id.* at 10-11 (citing *Bermudez*, 54 V.I. at 193). Plaintiffs further argue that since there has been no harm, there can be no viable claim for private nuisance, and that all the claims in Count VII: public nuisance, private nuisance, and conspiracy must be dismissed. *Id.* at 9-11.

¶ 95　The Court adopts the *Banks* analysis performed in *Bell v. Radcliffe* and concurs that Restatement (Second) of Torts standards for public nuisance represent the soundest rule for the Virgin Islands. 2015 WL 5773561, at *8-9 (adopted Restatement view after *Banks* analysis). The Restatement defines public nuisance as "unreasonable interference with a right common to the general public." RESTATEMENT (SECOND) OF TORTS § 821B(1). "A public right is one common to all members of the general public." *Id.* § 821B cmt. g. "It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large." *Id.* Additionally, a plaintiff bringing a public nuisance claim "must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." *Id.* § 821C(1).

¶ 96　With regard to the statutory claim of private nuisance, 28 V.I.C. § 331 states that "[a]ny person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor [and may also obtain

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*　　　　Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 26 of 32

2022 VI SUPER 20



injunctive relief]." "Private nuisance" is not defined by the statute, but other courts in the Virgin Islands have determined that the Restatement (Second) of Torts sets forth the appropriate elements to support a statutory private nuisance claim. *See Bermudez*, 54 V.I. at 192 (found Restatement definition to be "declaratory of the common law tort of private nuisance," applied pursuant to 1 V.I.C. § 4); *Alleyne*, 63 V.I. at 405 (defined private nuisance as "a substantial, unreasonable, interference with another's interest in the private use and enjoyment of land.") (citing *Cifre v. Daas Enters., Inc.*, 62 V.I. 338, 362 (V.I. Super. 2015)) (based upon *Banks* analysis therein.)

¶ 97　　The Restatement is consistent, defining private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land," that causes "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." RESTATEMENT (SECOND) OF TORTS §§ 821D, 821F. Additionally, "a private nuisance must be either intentional or unreasonable; or unintentional but negligent, reckless, or abnormally dangerous." *Tutein v. InSite Towers, LLC*, Civ. No. 12-17, 2018 WL 6599163, at *4 (D.V.I. Dec. 17, 2018) (citing RESTATEMENT (SECOND) OF TORTS § 822). In the Virgin Islands, noise, ethanol emissions, and vibrations caused by construction have all been deemed private nuisances. *Id.* (internal citations omitted).

¶ 98　　Here, the Court finds that the conclusory statements of ¶¶ 122 and 123 of the Counterclaim and Crossclaim do not constitute short and plain statements of the claims entitling Bohlke Defendants to relief as required by V.I. R. Civ. P. 8(a)(2). All of the listed "harms" alleged by Bohlke Defendants in subsections A. through D. as to each claim are insufficient to maintain a public nuisance or private nuisance cause of action. The four identified harms alleged are substantively identical as to both the public and private nuisance claims. The Court considers each alleged harm in turn.

¶ 99　　With regard to the factual allegations set out in Counterclaim and Crossclaim ¶ 122 A. and ¶ 123 A., Bohlke Defendants argue that Plaintiffs' lax compliance with safety standards creates "a danger to the public and commercial users of the St. Croix Airport and the aircraft which operate there" and "to BIA Defendants and their employees, customers and vendors which operate there."

¶ 100　Counterclaim and Crossclaim ¶ 122 B. and ¶ 123 B. allege that Plaintiffs store hazardous chemicals and construction debris at an open construction site on bare soil "which can be contaminated by leaking chemicals," directly adjacent to Bohlke Defendants' operating areas.

¶ 101　Counterclaim and Crossclaim ¶ 122 C. and ¶ 123 C. concern the "danger" created by allowing Plaintiffs to have a fuel license "without improving the property, installing safety apparatuses, or securing . . . [their] construction site."

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.*     Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 27 of 32

2022 VI SUPER 20




¶ 102  Lastly, Counterclaim and Crossclaim ¶ 122 D. and ¶ 123D. concern Plaintiffs having a fuel license without being required to pay applicable taxes and fees – but requiring the Bohlke Defendants to do so.

¶ 103  The first three of these allegations are best characterized as representing risks of potential harm. Such risks of harm are not actionable under the public nuisance standard, which requires individual claimants to "have suffered harm of a kind different from that suffered by other members of the public;" or under the private nuisance standard which requires "significant harm." *See* RESTATEMENT (SECOND) OF TORTS §§ 821C(1), 821D, 821F. The fourth allegation claims actual "harm" based upon the fact that VIPA treated Bohlke Defendants differently than Plaintiffs, which they characterize as discrimination. Such disparate treatment, or "discrimination," does not give rise to a claim for either public or private nuisance. Given the lack of any factual allegations showing that Bohlke Defendants are entitled to relief for public or private nuisance, the Court will grant Plaintiffs' Motion to Dismiss Count VII.

### Crossclaim against VIPA Defendants.

¶ 104  VIPA Defendants argue that Count VII fails to allege "that *any harm* actually occurred, let alone differentiating between the type(s) of harm," or that Bohlke Defendants suffered "a harm . . . different from that suffered by other member of the public." VIPA Motion at 18 (citing *Bell*, 2015 WL 5773561, at *8). Such allegations are required to maintain a claim of public nuisance. *Id.* VIPA Defendants argue that Bohlke Defendants "contend that VIPA and the Plaintiffs failed to comply with the minimum safety standards but fail to allege any actual harm occurred." *Id.* Similarly, VIPA Defendants argue that Bohlke Defendants fail to allege any harm actually occurred that would sustain a claim for private nuisance. *Id.* at 19. Finally, VIPA Defendants argue that since there is no liability for the underlying torts, there can be no conspiracy to commit said torts. *Id.* at 19-20.

¶ 105  In their Opposition, Bohlke Defendants argue that the Crossclaim sets-out facts that "describe an unreasonable interference with the public's common right to safety of air travel." Opposition to VIPA at 15. Bohlke Defendants further argue, with regard to public nuisance, that they have alleged "actions of the VIPA Defendants in enabling the Plaintiffs' noncompliance with applicable regulations compromising the safety of the public also caused the BIA Defendants to suffer discriminatory treatment and incur unfairly extensive expenses and investment commitments, all harms that are different than those suffered by the public." *Id.*

¶ 106  As to the claim for private nuisance, Bohlke Defendants argue "the Plaintiffs – as enabled by the VIPA Defendants – have created and conspired to create a private nuisance by actual or constructive invasion of the land and the structures and facilities thereon leased by BIA and VIPA." *Id.* Bohlke Defendants point to Crossclaim allegations that "Plaintiffs failure to follow regulations regarding the sale of fuel endangers the BIA Defendants and their customers, that the Plaintiffs' unlawful storage of fuel and hazardous chemicals creates a danger to the BIA Defendants and their customers, that the Plaintiffs' failure to comply with the standard terms of

their leases with VIPA results in unsecure and unsafe construction areas posing a danger to BIA Defendants and their customers." *Id.* at 15-16 (internal citations omitted). Bohlke Defendants assert that these allegations are sufficient to state a claim for private nuisance. *Id.* at 16.

¶ 107  The Court will dismiss the conspiracy portion of Count VII against VIPA Defendants, as well against Plaintiffs – the parties with whom they allegedly conspired. Also, the factual allegations that Bohlke Defendants put forward against VIPA Defendants mirror those alleged against Plaintiffs. The Court's analysis here is the same as that regarding the allegations against Plaintiffs. Because conclusory statements are insufficient to make out a claim of nuisance and sufficient facts must be alleged to put the opposing parties on notice of such claim, for the same reasons and bases relied upon in relation to Plaintiffs' Motion, the Court will dismiss Count VII against VIPA Defendants in its entirety.

¶ 108  In summary, the Court will grant both Plaintiffs' Motion to Dismiss and VIPA Defendants' Motion to Dismiss Count VII.

### VIII.  Counterclaim Count VIII: Defaming BIA Defendants Against Plaintiffs

¶ 109  Count VIII alleges that "Plaintiffs have intentionally and negligently made false and misleading statements to other persons regarding the BIA Defendants, which are not privileged and which are actionable irrespective of the special nature of the harm caused by those statements . . .." Counterclaim and Crossclaim ¶ 127. Bohlke Defendants list three nonexclusive actions in support of this claim. *See id.*[16] Bohlke Defendants also allege that "based on the facts recited herein and those to be adduced through discovery . . . the Plaintiffs have defamed the BIA Defendants" who have been damaged by those actions. *Id.* ¶¶ 128-29.

---

[16] A. The Plaintiffs made false complaints to the FAA, VIPA, and other third parties, and continue to do-so, to intimidate the BIA Defendants, including but not limited to false and defamatory statements in a spurious complaint to the FAA in matter #16-16-19. In that complaint, the Plaintiffs repeated many of the false and intentionally misleading statements made in this law suit by the Plaintiffs, and the Plaintiffs' statements therein are incorporated herein and repeated for reference. Many of the Plaintiffs' statements to the FAA and VIPA are provably-false, including Plaintiff Trond's own statements in his affidavit of March 25, 2017 to the FAA that "only Bohlke International" was allowed by VIPA to sell fuel at the Henry E. Rohlsen Airport at that time, when in fact Puma was selling fuel at the St. Croix Airport at that time.

B. The Plaintiffs knew or should have known that they were making false and intentionally misleading statements to the FAA for the purpose of harassing the BIA Defendants and attempting to use the FAA's and VIPA's enforcement mechanisms to coerce the BIA Defendants, so that no privilege applied to the Plaintiffs' statements to the FAA, VIPA or any other person to whom the Plaintiffs' statements in #16-16-19 were communicated. The Plaintiffs also knew that their complaint in #16-16-19 would bring FAA scrutiny on VIPA, and the Plaintiffs intended that VIPA would then pressure the BIA Defendants to acquiesce in Plaintiffs' anti-competitive, discriminatory and dangerous practices. As with this law suit, the Plaintiffs intended to have a third-party regulator put its "thumb on the scales" to achieve the competitive advantage that the Plaintiffs lacked the business acumen to achieve for themselves in the market.

C. The FAA rejected the Plaintiffs' complaint #16-16-19 in its entirety, however, the BIA Defendants' professional, business, private and public reputations and their related economic interests and prospective advantages were irreparably damaged. As an example, local media sources reprinted the false and misleading statements made by the Plaintiffs in both their FAA proceeding and this law suit, further damaging the BIA Defendants (see e.g., Daily News, December 16, 2016.) As a second example, the Plaintiffs have used the same and highly similar statements to pressure VIPA by accusing VIPA as a coconspirator of the BIA Defendants, and knowing that VIPA regulates the BIA Defendants and is their landlord, into making a secret deal with the Plaintiffs and to the disadvantage of the BIA Defendants to have the Plaintiffs' claims in this matter against VIPA dismissed as quid pro quo to induce VIPA to allow the Plaintiffs to continue operating without complying with the Minimum Standards.



¶ 110   In their Motion, Plaintiffs argue that Bohlke Defendants have failed to properly make a claim for defamation, the elements of which are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Plaintiffs' Motion at 17 (citing *Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566, 585-87 (V.I. 2012)). Plaintiffs argue that by alleging that they made unidentifiable false statements to unidentified third parties makes it impossible for the Plaintiffs to respond. *Id.* Plaintiffs further argue that Bohlke Defendants fail to identify actionable damages even if their allegations are correct – and without damages there is no cause of action. *Id.* at 17-18 (internal citations omitted). Plaintiffs argue that Count VIII must be dismissed, or alternatively, that Bohlke Defendants must be required to "provide details such that the claim of defamation is not so vague and ambiguous as to prevent Plaintiffs from reasonably responding." *Id.*

¶ 111   In opposition, Bohlke Defendants argue they have made out a claim for defamation by alleging that "the Plaintiffs (1) made false complaints about the BIA Defendants (2) to third parties (VIPA and the Federal Aviation Administration ('FAA')) (3) made with fault on the part of the Plaintiffs and (4) the statements caused harm to the BIA Defendants' professional, business, private and public reputations." Opposition to Plaintiffs at 14 (citing *Joseph*, 57 V.I. at 585-88). Bohlke Defendants argue that these "allegations are specific in that they describe the statements published and the parties to whom the statements were published, and the Plaintiffs cannot complain that they are not on notice of the nature of and grounds for the claims against them for defamation." *Id.* It is Bohlke Defendants' position that the fact that the Count refers to unnamed "third parties" cannot render the claim inadequate particularly in light of the specific identification of VIPA and the FAA. *Id.* at 15. Bohlke Defendants assert that through discovery Plaintiffs may identify currently unknown third parties. *Id.* While Bohlke Defendants argue that the allegations in the Count are sufficient, they request leave to amend should the Court find otherwise.

¶ 112   In Reply, Plaintiffs maintain that Count VIII must be dismissed because it "failed to identify any actionable damages," that there can be no cause of action without actionable damages, and that Count VIII must therefore be dismissed. Reply at 11 (internal citations omitted).

¶ 113   The parties correctly identify that the elements to make out a claim of defamation are: (1) the existence of "a false and defamatory statement concerning another;" (2) the existence of "an unprivileged publication [of the false and defamatory statement] to a third party;" (3) "fault amounting to at least negligence on the part of the publisher;" and (4) "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Joseph*, 57 V.I. at 585-88.

¶ 114   Considering first the argument related to the publication of allegedly defamatory statements to unidentified third parties, the inclusion of unknown third parties does not affect the overall viability of the claim which adequately puts Plaintiffs on notice of the claim against it.




This is the kind of information appropriate for discovery and does not provide a basis for dismissal or requiring a more definite statement. *See Wintberg Heights Condo. Owners Ass'n, Inc.*, 72 V.I. at 296 (internal citations omitted).

¶ 115 Regarding the question of harm caused by the publication, the Supreme Court has outlined the following standard:

> The fourth element is "either the actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." RESTATEMENT (SECOND) OF TORTS § 558(d). The Restatement defines "special harm" as "the loss of something having economic or pecuniary value ... [which] must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." RESTATEMENT (SECOND) OF TORTS § 575, cmt. b. In essence, this element refers to two general categories of liability-producing statements. First, there are those that the Plaintiff is able to demonstrate caused him special harm. Second, there are those for which Plaintiff need not prove the existence of special harm because they are actionable on their face. This second category clearly begs the question, what makes a defamatory statement actionable on its face, or "actionable *per se*"? The answer to this question depends in part on whether the statement is either a libel or a slander. Specifically, "[o]ral defamation [i.e. slander] is tortious if the words spoken fall within a limited class of cases in which the words are actionable *per se*, or if they cause special damages. Written defamation [i.e. libel] is actionable *per se*." RESTATEMENT (SECOND) OF TORTS § 568 cmt. b. Thus, special damages need only be proven when the statement is slanderous and it does not fall into one of the limited classes of speech which is actionable *per se*. The classes of speech that are actionable *per se* are outlined in RESTATEMENT (SECOND) OF TORTS, §§ 570-574.

*Joseph*, 57 V.I. at 585-88.

¶ 116 Thus, a published defamatory statement may be actionable *per se* without a showing special harm if it falls categories outlined in the Restatement (Second) of Torts, including that of § 573, which states: "One who publishes a slander that ascribes to another conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession, or of his public or private office, whether honorary or for profit, is subject to liability without proof of special harm." The Restatement further defines publication in part as "its communication intentionally or by a negligent act to one other than the person defamed." RESTATEMENT (SECOND) OF TORTS, §§ 577. Since the alleged statements here concern Bohlke Defendants' business, the statements may be deemed actionable *per se* without an allegation of special damages. Therefore, the Court finds that Count VIII has been adequately pled and Plaintiffs' Motion for Dismissal or a More Definite Statement will be denied as to Count VIII.

On the basis of the foregoing, it is hereby

**ORDERED** as to **Plaintiffs' Motion to Dismiss or for a More Definite Statement** regarding Bohlke Defendants' Counterclaims, as follows:

COUNT I: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNT II: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNT III: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNTS IV and V: Prayer for dismissal is GRANTED as to claims of negligent interference with existing and prospective interference with economic interests. Otherwise, Plaintiffs' Motion is DENIED;

COUNT VI: Motion to dismiss is GRANTED and Bohlke Defendants' claims against Plaintiffs in this Count are DISMISSED (and prayer for a more definite statement is denied as moot);

COUNT VII: Motion to dismiss is GRANTED and Bohlke Defendants' claims against Plaintiffs in this Count are DISMISSED (and prayer for a more definite statement is denied as moot);

COUNT VIII: Motion is DENIED in its entirety. It is further

**ORDERED** as to **VIPA Defendants' Motion to Dismiss or for a More Definite Statement Regarding Bohlke Defendants' Crossclaims**, as follows:

COUNT I: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNT II: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNT III: Prayer for dismissal is DENIED; prayer for more definite statement is GRANTED. Bohlke Defendants shall amend their pleading as ordered below;

COUNTS IV and V: Prayer for dismissal is GRANTED as to crossclaim of negligent interference with existing and prospective interference with economic interests, which is DISMISSED. Otherwise, VIPA Defendants' Motion is DENIED;

COUNT VI: Motion to Dismiss is GRANTED as to conspiracy claim only, which crossclaim is DISMISSED. Otherwise, VIPA Defendants' Motion is DENIED;

*Island Airlines, LLC., et al. v. William Bohlke, Jr., et al.* Civ. No. SX-2016-CV-00404
Memorandum Opinion and Order
Page 32 of 32

2022 VI SUPER 20

<u>COUNT VII</u>: Motion to Dismiss is GRANTED and Bohlke Defendants' crossclaim is DISMISSED (and prayer for a more definite statement is denied as moot). It is further

**ORDERED** that within 21 days of the date of this Order, Bohlke Defendants shall file and serve their amended counterclaim against Plaintiffs, consistent with this Opinion and Order; and Plaintiffs shall file their responsive pleading to the same within 21 days of service. It is further

**ORDERED** that within 21 days of the date of this Order, Bohlke Defendants shall file their amended crossclaim against VIPA Defendants, consistent with this Opinion and Order, correctly identifying the VIPA official sued in his/her official capacity who has succeeded original Defendant David W. Mapp and is automatically substituted as a party herein pursuant to V.I. R. Civ. P. 25(d); and VIPA Defendants shall file their responsive pleading to the amended crossclaim within 21 days of service.

DATED: February 14, 2022.

DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor